**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------------X   Case No.

CINDY CARTER,

                              Plaintiff,                            **SUMMONS**

            -against-                                  **Jury trial Demanded**

MACY, INC., LEVI STRAUSS & CO., INC., and LINDA
LEWIS, in her individual and professional capacities,

                              Defendants.
---------------------------------------------------------------------------X

       Plaintiff Cindy Carter ("Carter" or "Plaintiff"), by her attorneys, Castillo Stephens LLP, as and for her Complaint in this action against Macy's, Inc. ("Macy's"), Levi Strauss & Co., Inc. ("Levi") and Linda Lewis ("Lewis") (together referred to as "Defendants"), hereby states and alleges as follows:

**JURISDICTION AND VENUE**

       1.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding the deprivation of Plaintiff's rights under Section 1981. Further, the Court has supplemental jurisdiction over Plaintiff's related claims arising under state and local law pursuant to 28 U.S.C. § 1367(a).

       2.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendant Goldman Sachs's headquarters are located within the Eastern District of New York, and a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this District.

**PARTIES**

       3.     Plaintiff Cindy Carter is a former employee of Defendant Macy's residing in

Nassau County, New York. Carter worked as a Men's Merchandiser and subsequently as a Men's Levi's Associate. While employed as a Men's Levi's Associate, Carter was paid jointly by Defendant Levi and her work was at least partially supervised directly by Levi. At all relevant times, Ms. Allen met the definition of an "employee" under all applicable statutes.

4. Defendant Macy's is, upon information and belief, a corporation duly organized under the laws of the State of Delaware and is registered as a foreign business corporation in the State of New York. Macy's maintains its principal place of business at 7 West 7th Street, Cincinnatti, OH 45202, and maintains an address for service of process in the State of New York at c/o Corporate Creations Network Inc, 15 North Mill Street, Nyack, NY 10960. Macy's is a self-described "premier omnichannel retailer" that sells multiple brands through stores, online store, and mobile applications. At all relevant times, Macy's met the definition of an "employer" under all applicable statutes.

5. Defendant Levi is, upon information and belief, a corporation duly organized under the laws of the State of Delaware and is registered as a foreign business corporation in the State of New York. Levi maintains its principal place of business at 1155 Battery Street, San Francisco, CA 94111, and maintains an address for service of process in the State of New York at c/o Corporate Service Company, 80 State Street, Albany NY 1207-2543. Levi is a clothing manufacturer and retailer that sells clothing and other items to retailers and directly to the public. At all relevant times, Levi met the definition of an "employer" under all applicable statutes.

6. At all relevant times, Defendant Lewis was an employee of Macy's and a store manager responsible for the day-to-day operations of the department store where Carter worked. At all relevant times, Lewis controlled significant functions of Macy's business at the store location, was personally responsible for much of the discriminatory conduct set forth herein, and

met the definition of an "employer" under all applicable statutes.

## FACTUAL ALLEGATIONS

### Background

7.     Carter is an afro-Caribbean woman. She was born on May 12, 1974, on the island of Barbados, where she grew up. Carter emigrated to the United States on an employment contract in 2000. In or about November or December 2000, Carter was diagnosed with thyroid cancer. Carter underwent surgery followed by three months of radiation therapy. She also underwent full body scans for seven years and was required to take radiation pills. As a result of her radiation therapy and continued treatment, Carter began wearing a wig. When her hair began growing back, it was usually in a short afro of tightly curled hair.

8.     After Carter became ill, her employer cancelled her employment contract. Rather than return to Barbados, Carter relocated to New York, where she received treatment at Kings County Medical Center and Nassau Univversity Medical Center. Carter started working as a nanny in the town of Massapequa.

9.     In late 2004, after being subjected to wage theft, verbal and emotional abuse, and threats of deportation by her employer, Carter was physically assaulted by her employer. Through the assistance of Catholic Charities, Carter applied for and was eventually granted a U visa. Carter received her employment authorization in 2010.

### Employment by Macy's and Levi

10.     On October 31, 2011, Carter began working for Macy's at its Sunrise Mall store in Massaqequa as seasonal help. Her then-manager, Nicole Hernandez, liked her work, and Carter was offered a permanent position as a Men's Merchandiser.

11. In or about February or March 2012, on the recommendation of Nicole Hernandez, who was the Men's merchandising manager until the end of 2012, Carter was recommended for the position of Men's Levi's Associate. In this position, Carter was directly responsible for assisting customers with the purchase of men's Levi's products. As Men's Levi's Associate, Carter received one-half of her salary from Macy's and the other half from Levi. Levi's would pay Carter a quarterly bonus whenever sales goals were met. Payments were made through Macy's. On at least two occasions, at Levi's behest, Carter went to two other Macy's department stores to assist in setting up Levi's departments within those stores.

12. Floor manager Maryann Porter directly supervised Carter's day-to-day activities. Levi's representative, Heather Nendza, regularly checked with Carter on sales goals, the presentation of merchandize in the Mens' Levi's Department, and such matters as whether customers were being misdirected to other departments. In or about 2012, Defendant Lewis was brought in as store manager.

### Discrimination in the Workplace

13. In all, counting the sales associates working in the various departments in the same area of the store, there were about 20 employees per shift. Of these, four were black or African American, and the rest were white.

14. After she began working with Macy's, Carter began noticing certain racist behavior among her white co-workers. For example, white employees sometimes refused to assist black and hispanic customers, and sometimes made racist comments, including referring to black customers and co-workers as "niggers." These incidents became considerably more prevalent after Lewis became the store manager. This appeared to be the direct result of Lewis's practices and policies and her general disregard for the concerns of black employees and minority

customers about the racist conduct of white employees. It was also a consequence of Lewis's own racially insensitive conduct.

15. For example, in or about July 2015, two white sales associates, Theresa Casey and Rosemary Romano, refused to help a hispanic customer. Carter and a black co-worker, "Aloma," complained to Lewis and " Frank," the Assistant Store Manager. At one point before Lewis and Frank showed up, Casey commented, "I can't believe I have to work with these animals." Lewis and Frank came to the floor, but never spoke to either Carter or Aloma about the incident. Instead, they comforted Casey and offered to take her upstairs to talk, which offer Casey accepted.

16. Lewis made little or no effort to restrain racist behavior by white sales associates towards customers or their black coworkers, despite complaints by customers and several black employees. This encouraged these workers to engage in unrestrained racism. One associate, "Lena," regularly insulted customers of color. To one female hispanic customer, Lena said, "I don't like you and your children." On another occasion, she refused to ring up a black customer. Carter reported both these incidents to store management. Nothing was done. "Maryann," one of two black managers, complained to Lewis about the racist conduct of the white sales staff. Lewis responded, "There is no racism" at the store.

17. As a consequence of her cancer treatment, Carter regularly wore a wig to work. On occasions, because the wig was uncomfortable, especially when it was hot, Carter would forgo wearing the wig. On one of these occasions, shortly after Lewis began serving as store manager, Lewis said to Carter, "What happened to that pretty hair?" Lewis had a look of disgust on her face when she made this comment. She told Carter she did not like her hair like that and asked her to put back on the wig.

18. On another occasion, the under-CEO of Macy's was coming to visit the store. The day before the visit, Lewis told Carter she had to cover up her natural hair, saying that she did not want to see her hair "like that," meaning in its natural state. Carter did not comply. On the day of the visit, Lewis complained that Carter did not wear her wig.

19. Lewis continued complaining regularly whenever Carter did not wear her wig. This was often done in the presence of other Macy's employees. In contrast, whenever Carter wore her wig, Lewis complimented Carter on her looks.

20. Lewis's behavior distressed Carter greatly, especially when it occurred in the presence of other employees, and particularly those white employees who were already prone to open displays of racially discriminatory behavior towards Carter, her black co-workers, and minority customers.

21. In about February or March 2015, Carter complained to Macy's Human Resources department about Lewis's conduct. Carter was advised that Macy's cannot prove racism, so they can't do anything about it. However, she was advised that Lewis would get in touch with her to apologize. Eventually, in light of multiple complaints about the conditions at the store and Lewis's conduct, Macy's sent a letter for Lewis to post and read each day for two weeks to the staff. The letter stated that racism was not part of Macy's culture and that Macy's takes a hard line towards racism.

22. In response to customer complaints, Macy's offered customers coupons and posted a "Customers' Bill of Rights" in the store elevator.

23. Each time Lewis had to read the letter about Macy's racial discrimination policy to staff, she did so in pantomime and a "shuck and jive"-style, mocking tone, engendering open laughter from the same white associates that had provoked complaints from customers and non-

white staff members. Lewis prefaced her readings by declaring, "I have to read this letter because apparently corporate thinks there's racism at this store."

24. For the next month or so, however, Lewis said nothing to Carter about her hair.

25. This changed around June 2015, when, at the end of Carter's workday, while waiting for a cab, Carter removed her wig, revealing a stocking cap beneath the wig. Lewis approached Carter at this point and said, "Your face is so shiny. You have to do something about your hair and your face."

26. Carter once again complained to Macy's Human Resources manager about the incident. When she made this complaint, another Human Resources employee told Carter that Lewis "is not being racist. People take things out of context. She just doesn't understand your type of hair. I would try to see how her heart was."

27. After this complaint, Lewis continued making complimentary comments to Carter whenever she wore her wig, saying things like, "You see how much better you look with a wig?" When at the end of June 2015 Carter cut her hair into an afro, Lewis said, "I don't think you should have done that."

28. This behavior by Lewis and the dismissive response by Human Resources weighed heavily on Carter's spirit. Carter's mood was not helped by her prior experience of abuse at the hands of her employer. In light of these past experiences of physical and emotional abuse by an employer, Lewis's position of power over her, the continued unrepentant racist conduct by Lewis and other white employees at the store, and the lack of decisive action by Macy's despite multiple complaints by Carter and others, Carter became increasingly distressed and despondent. Eventually, on August 16, 2015, as a result of these distressing experiences, Carter quit her employment at Macy's.

29. Carter was not the only black employee to be subjected to unchecked, inappropriate behavior at the hands of Lewis. In particular, Lewis regularly engaged in sexually inappropriate conduct towards Marcus Jackson, a black male store employee. This conduct included telling Jackson, "Look, I got a sunburn this weekend," and lifting her dress to show him; putting a foot on a stool in front of Jackson, raising up her dress, and lotioning her leg while wearing no underwear; telling Jackson, "I don't like the way you're looking at me; it looks like you want to take me"; telling him, "I would like to sample that"; and telling him, "You know, I like brothers."

30. This is an action for declaratory relief, as well as monetary damages, to redress Defendants' unlawful employment practices against Plaintiff, including subjecting Plaintiff to disparate working conditions and pay, and by denying her the opportunity to work in an employment environment free of unlawful discrimination due to her race and religion, in violation of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"); the New York State Human Rights Law, N.Y. Exec. Law §§ 290, et seq. ("NYSHRL"), and the Suffolk County, New York Human Rights Law, Suffolk County Administrative Code §§528-1 et seq. ("SCHRL").

31. Defendants' discriminatory and otherwise unlawful conduct was knowing, malicious, willful and wanton and/or showed a reckless disregard for Plaintiff, which has caused andd continues to cause Plaintiff to suffer substantial economic and non-economic damages, and severe mental anguish and emotional distress.

32. As a direct and proximate result of Defendants' unlawful actions, Carter has suffered, and will continue to suffer, monetary and/or economic damages, including, but not limited to, the loss of past and future income, compensation and other benefits to which she

would otherwise be entitled.

33. As a further direct and proximate result of Defendants' unlawful actions, Carter has suffered damage to her reputation and career.

34. As a further direct and proximate result of Defendants' unlawful actions, Carter has suffered severe mental anguish and emotional distress.

35. Defendants' unlawful conduct against Carter was intentional and malicious and/or showed a deliberate, willful, wanton and reckless disregard for Carter's rights under federal, state and local law.

## AS AND FOR A FIRST CAUSE OF ACTION

(Discrimination in Violation of Section 1981)

36. Plaintiff hereby repeats and realleges each and every allegation in the foregoing paragraphs as if set forth fully herein.

37. Defendants have discriminated against and harassed Plaintiff on the basis of her race and/or color in violation of Section 1981 by denying her the same terms and conditions of employment available to employees who are not Black, including, but not limited to, subjecting her to disparate working conditions because she is Black, and denying her the opportunity to work in an employment environment free of unlawful discrimination due to her race.

38. As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of Section 1981, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which she is entitled to an award of monetary damages and other relief.

39. As a direct and proximate result of Defendants' unlawful discriminatory and harassing conduct in violation of Section 1981, Plaintiff has suffered, and continues to suffer,

severe mental anguish and emotional distress for which she is entitled to an award of monetary damages and other relief.

40. Defendants' unlawful discriminatory and harassing conduct constitutes a willful and wanton violation of Section 1981, was outrageous and malicious, was intended to injure Plaintiff, and was committed with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

AS AND FOR A SECOND CAUSE OF ACTION

(Discrimination in Violation of the NYSHRL)

41. Plaintiff hereby repeats and realleges each and every allegation in the foregoing paragraphs as if alleged fully herein.

42. Defendants have discriminated against Plaintiff on the basis of her race, color and/or religion in violation of the NYSHRL by denying her the same terms and conditions of employment available to employees who are not Black, including, but not limited to, subjecting her to disparate working conditions because she is Black, and denying her the opportunity to work in an employment environment free of unlawful discrimination due to her race.

43. As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered and continues to suffer monetary and/or economic harm for which she is entitled to an award of monetary damages and other relief.

44. As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress for which she is entitled to an award of monetary damages and other relief.

## AS AND FOR A THIRD CAUSE OF ACTION

### (Discrimination in Violation of the SCHRL)

45. Plaintiff hereby repeats and realleges each and every allegation in the foregoing paragraphs as if alleged fully herein.

46. Defendants have discriminated against Plaintiff on the basis of her race and/or color in violation of the SCHRL by denying her the same terms and conditions of employment available to employees who are not Black, including, but not limited to, subjecting her to disparate working conditions because she is Black, and denying her the opportunity to work in an employment environment free of unlawful discrimination due to her race and religion.

47. As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the SCHRL, Plaintiff has suffered and continues to suffer monetary and/or economic harm for which she is entitled to an award of monetary damages and other relief.

48. As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress for which she is entitled to an award of monetary damages and other relief.

49. Defendants' unlawful discriminatory and harassing conduct constitutes a willful and wanton violation of the SCHRL, was outrageous and malicious, was intended to injure Plaintiff, and was committed with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendants, containing the following relief:

a. a declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States, the State of New York, and the County of Suffolk, New York;

b. an award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including, but not limited to, the loss of past and future income, wages, compensation, job security and other benefits of employment;

c. an award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for her severe mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical or mental injuries;

d. an award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to her professional and personal reputations and loss of career fulfillment;

e. an award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

f. an award of punitive damages;

g. an award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law; and

    h.        such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: August 15, 2018
       New York, New York

                                            ____/S/_____
                                            CASTILLO STEPHENS LLP
                                            By: GLENDOVAL J. STEPHENS
                                            305 Broadway, Suite 1200
                                            New York, NY 10007
                                            (212) 385-1400
                                            firm@castillostephens.com
                                            Attorneys for Plaintiff